# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CYNTHIA VILLAGOMES,

    Plaintiff,

vs.

LABORATORY CORPORATION OF AMERICA, *et al.*,

    Defendants.

Case No. 2:08-cv-00387-RLH-GWF

**ORDER**

**Motion to Strike Plaintiff's Supplemental Expert Report - #75**

This matter is before the Court on Defendants' Motion to Strike Plaintiff's Supplemental Expert Report and Fifth Supplemental Rule 26 Disclosures (#75), filed on May 28, 2010; Plaintiff's Response to Defendants' Motion to Strike Plaintiff's Supplemental Expert Report and Fifth Supplemental Rule 26 Disclosures (#102), filed on October 18, 2010; and Defendant's Reply in Support of Defendants' Motion to Strike Plaintiff's Supplemental Expert Report and Fifth Supplemental Rule 26 Disclosures (#103), filed on October 28, 2010. The Court conducted a hearing in this matter on November 4, 2010.

## BACKGROUND

In November 2005, Plaintiff Cynthia Villagomes consulted with Dr. Karl G. Heine, a dermatologist, regarding a small red bump that had formed on her throat. Dr. Heine obtained a "punch" specimen of the bump and sent it to Laboratory Medicine Consultants for biopsy. The biopsy was performed by Dr. Todd C. Murry, M.D., a dermapathologist. Dr. Murry reported on his analysis of the specimen on December 19, 2005 and February 10, 2006. Dr. Murry stated that the biopsy results were positive, meaning that the bump was a cancerous tumor-- lymphoma. Plaintiff was thereafter referred to Dr. Edward Kingsley at Comprehensive Cancer Centers for further

evaluation. After performing a variety of tests, Dr. Kingsley determined that the tumor needed to be removed. Dr. Kingsley informed the Plaintiff that after the tumor was removed, it would be sent to a laboratory for analysis. Dr. Kingsley also allegedly informed the Plaintiff that the results of the laboratory analysis of the tumor would form the basis for future treatment.

In March 2006, Dr. Ronald Hofflander removed the tumor. Following the surgery, the tumor was sent to Defendants for testing and analysis. Defendants allegedly lost the tumor before it could be tested and analyzed. Plaintiff alleges that because the tumor was lost, she and her doctors will never know the stage to which her cancer had progressed and whether the margins around the tumor were clean. She alleges that without this information, her doctors were unable to prescribe a definitive course of treatment for her cancer. Consequently, Plaintiff alleges that she must now live the rest of her life with the fear that her cancer will return as a result of Defendants losing the tumor. *Amended Complaint (#35)*, ¶ 21. Plaintiff further alleges that as a result of not having a pathology report on her tumor she must now visit her doctor every three to six months for the next ten years, and her husband must check her weekly to see if the cancer has returned. *Id.*, ¶ 22. She alleges that as a result of Defendant's negligence, she has suffered and will continue to suffer serious emotional distress, severe anxiety, extreme fear and uncertainty. *Id.*, ¶ 27.

Both sides have retained psychiatrists as expert witnesses to testify about Plaintiff's mental state and the extent to which she has suffered or will continue to suffer emotional distress, anxiety, fear and uncertainty as a result of the lost tumor and its effect on her medical treatment and the risk for cancer reoccurrence. One of the disputes between the Plaintiff's expert, Dr. Kenan, and the Defendants' expert, Dr. Roitman, is whether Plaintiff's anxiety and fears about the lost tumor are based on objectively reasonable medical concerns. Plaintiff's expert Dr. Kenan stated in his May 11, 2009 report that if the tumor had been tested and the margins of the tumor were negative for cancer cells, then Plaintiff would not have endured the level of stress she has endured in the years since the tumor was lost. *Motion to Strike (#75), Exhibit "C," Kenan report,* p. 13. Dr. Kenan's foundation for this statement was the written medical records and reports of Plaintiff's treating physicians. *Id.*, pp. 7-10.

. . .

Defendants' psychiatrist expert Dr. Roitman states in his March 2010 report that Plaintiff's anxiety over the lost tumor is not objectively founded. Dr. Roitman relies, in part, on the testimony of Plaintiff's treating physician, Dr. Kingsley. *Motion to Strike (#75), Exhibit "D," Roitman report.* Dr. Kingsley testified at his June 3, 2009 deposition that the risk of cancer reoccurrence was quite low based on the type of lymphoma that Plaintiff has. He testified that this was why he was only seeing Plaintiff twice a year. Dr. Kingsley also testified that there was a very small chance that if the doctors had re-excised around the tumor site, residual lymphoma would have been found. In that event, he would, perhaps, have offered radiation treatment or recommended a wider resection. Because the risk of recurrence was highly unlikely, Dr. Kingsley indicated that the loss of the tumor did not alter his recommended course of action--which was to do nothing. He further stated that the risk of reoccurrence of Plaintiff's lymphoma is five to ten percent. He opined that the level of uncertainty created by the lost specimen is less than five percent. *Motion to Strike (#75), Exhibit "I," Dr. Kingsley's deposition*, pp. 28-29.

On May 11, 2010, the last day of discovery, Plaintiff served a supplement to her expert witnesses designation which included a supplemental report, also dated May 11, 2010, by Dr. Kenan. *Motion to Strike (#75), Exhibit "E," Dr. Kenan's supplemental report.* In his supplemental report, Dr. Kenan recounts a May 10, 2010 telephone interview that he conducted with Dr. Murry, the dermapathologist who performed the biopsy on the punch specimen which resulted in the diagnosis of Plaintiff's lymphoma. Dr. Murry reportedly told Dr. Kenan that "[e]valuation of the missing tumor 'could have' provided clinically significant meaningful information, including; information regarding a more specific diagnosis; life expectancy; and treatment information." Dr. Murry also reportedly stated that "'[c]linically meaningful information' in this instance would have meant, for Ms. Villagomes, that she would 'worry less'; would 'know what her prognosis is' to a clinically significant degree; and allow her to 'pursue a specific different type of treatment,' if appropriate, under the informed advice of her oncologist." *Id.*, p. 2. Based on his conversation with Dr. Murry, "along with additional research, including my speaking with several pathologists," Dr. Kenan opines that "an analysis of the tumor would have provided considerable clinically significant, perhaps life-saving, information which an analysis of

3

only the margins would not provide." Dr. Kenan therefore states that Plaintiff has good reason to worry because the tumor was lost. *Id.*, p. 3. In addition to serving Dr. Kenan's supplemental expert report, Plaintiff also supplemented her list of witnesses on May 11, 2010 to list Dr. Murry as a lay witness. *Defendant's Motion to Strike (#75), Exhibit "F."*

## DISCUSSION

Defendants request that the Court strike Dr. Kenan's May 11, 2010 supplemental report and preclude him from testifying on the matters contained in that report, on the grounds that (1) it is not a proper or timely supplement to Dr. Kenan's expert opinions; (2) the Plaintiff is attempting to indirectly introduce expert opinion testimony by Dr. Murry in violation of Fed.R.Civ.Pro. 26(a)(2)(A) and (B); and (3) Dr. Kenan's opinions regarding what a clinical analysis of the tumor would have shown are inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Defendants also request that Dr. Murry be precluded from testifying at trial as the opinions attributed to him in Dr. Kenan's supplemental report.

Subparagraph (A) of Rule 26(a)(2) provides that a party must disclose the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Subparagraph (B) further provides that if the witness is one retained or specially employed to provide expert testimony in the case, then the disclosure must be accompanied by a report, prepared and signed by the witness, which contains a complete statement of all opinions the witness will express and the basis or reason for them, and the data or other information considered by the witness in forming his opinions. In addition, to these requirements, the report or accompanying materials must set forth the witness's qualifications, including a list of all publications authored in the previous 10 years, a list of all other cases in which the witness testified as an expert at trial or deposition during the previous 4 years, and the compensation to be paid to the expert for his study and testimony. The purpose of requiring expert reports under Rule 26(a)(2)(B) is to eliminate unfair surprise to the opposing party and to conserve resources. *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D.Nev. 1998).

The requirements for a written report and other disclosures under paragraph (2)(B) apply only to expert witnesses who are retained or specially employed to provide expert testimony in the

case. A treating physician can generally be deposed or called to testify at trial without being required to prepare a written report. *Piper v. Harnischfeger Corporation*, 170 F.R.D. 173, 174 (D.Nev. 1997). As *Piper* explains:

> It is common place for a treating physician during, and as part of, the course of treatment of a patient to consider things such as the cause of the medical condition, the diagnosis, the prognosis, and the extent of disability caused by the condition, if any. Opinions such as these are a part of the ordinary care of the patient and do not subject the treating physician to the extensive reporting requirements of Fed.R.Civ.P. 26(a)(2)(B).

*Piper*, 170 F.R.D. at 175.

This exemption for treating physicians from the requirements of Rule 26(a)(2)(B) only applies to testimony about matters that were within the scope of the physician's care or treatment. As the court in *Elgas v. Colorado Belle Corp.* states, "'if a physician, even though he may be a treating physician, is specially retained or employed to render a medical opinion based on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report.'" *Elgas*, 179 F.R.D. at 298 n 2, quoting *Hall v. Sikes*, 164 F.R.D. 46-48-49 (E.D.Va. 1995). See *also McCluskey v. Allstate Ins. Co.*, 2006 WL 5230018 (D. Mont. 2006) at *2.

The medical opinions that Dr. Murry reportedly provided to Dr. Kenan on May 10, 2010 clearly fall in the latter category described in *Elgas*. Dr. Murry's role as a "treating physician" was limited to performing a biopsy analysis of the specimen that was taken in November 2005. He was not a treating physician in regard to Plaintiff's subsequent medical care, and, in particular, had no involvement as a treating physician in evaluating the medical risks caused by the inability to evaluate the tumor or in deciding what medical treatment should be provided to Plaintiff following the removal of the tumor. Thus, in order for Dr. Murry to testify at trial regarding the opinions ascribed to him in Dr. Kenan's supplemental report, Plaintiff was required to timely disclose Dr. Murry as an expert witness, provide a written report prepared and signed by him, and disclose the other information required by Rule 26(a)(2)(B). Because this was not done on or before the expert witness disclosure deadline, Dr. Murry may not testify at trial about the opinions ascribed to him in

Dr. Kenan's supplemental report.[1]

Dr. Kenan should also not be permitted to testify at trial about the expert opinions provided to him by Dr. Murry or other unnamed pathologists, or about the medical research in pathology or oncology that Dr. Kenan may have conducted in preparing his supplemental report. Dr. Kenan's area of expertise is psychiatry and, as stated in his May 11, 2009 report, his assignment in this case was to perform a forensic psychiatric evaluation of Plaintiff. Plaintiff makes no assertion that Dr. Kenan is qualified to provide expert testimony in the fields of pathology or oncology.

Rule 703 of the Federal Rules of Evidence states that a qualified expert may base his opinions on facts or data made known to him if it is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject. The facts and data relied on by the expert need not be admissible in order for the opinion or inference to be admitted. A testifying expert may rely on the opinions of non-testifying experts as a foundation for the opinions within the testifying expert's field of expertise. Rule 703, however, is not a license for an expert witness to simply parrot the opinions of non-testifying experts. *United States Gypsum v. LaFarge North American, Inc.*, 670 F.Supp.2d 748, 758 (N.D. Ill. 2009); *Stephenson v. Honeywell Intern., Inc.*, 703 F.Supp.2d 1250, 1255 (D.Kan. 2010); *Deutz Corp. v. City Light & Power, Inc.*, 2009 WL 2986515 (N.D.Ga. 2009) *6. *United States Gypsum* states in this regard:

> "[i]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the expert; and it is apparent from the wording of Rule 703 that there is no *general* requirement that the other expert testify as well." *Dura Automotive Systems of Indiana, Inc. v. CTS Corporation*, 285 F.3d 609, 613 (7th Cir. 2002). Such testimony need only be excluded when an expert is "just parroting the opinion" of another expert. *Id.* Otherwise, an expert may rely on information provided by non-testifying experts, so long as he does not merely serve as a spokesman for the absent expert, vouching for the truth of his statements. *In re James Wilson Associates*, 956 F.2d 160, 172-73 (7th Cir. 1992).

---

[1] The Court does not preclude either party from calling Dr. Murry as a witness at trial to testify about the biopsy analysis he performed. Although Dr. Murry was not listed as a witness by Plaintiff until the last day of discovery, Defendant will not be prejudiced if Dr. Murry is allowed to testify about the biopsy findings and conclusions set forth in his December 2005 and February 2006 biopsy reports.

670 F.Supp.2d at 758.

In *Deutz Corp. v. City Light & Power, Inc.*, the court held that an engineer expert witness was not permitted to offer opinions regarding metallurgical testing performed by other experts. The court stated that the engineer expert did not merely use the metallurgical report as data upon which an expert in his field would reasonably rely to form an opinion, but rather used the report as substantive evidence of one of his ultimate conclusions. The court cited *Larsen v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) which stated that a person does not become an expert in another field simply by reviewing another expert's reports or research. *Deutz*, 2009 WL 2986515 at *6. Dr. Kenan's supplemental report indicates that he intends to testify about the clinical significance of the loss of the tumor, based on the opinions provided to him by Dr. Murry or other unnamed pathologists. Because Dr. Kenan is not qualified to opine on the clinical significance of the loss of the tumor and will simply be parroting or serving as a spokesman for the absent experts, he should be precluded from providing such testimony.

Rule 703 also provides that even if the expert properly bases his opinions on facts or data that is not admissible, the inadmissible facts or data shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. In this case, Dr. Murry's oral opinions were not obtained until the very end of discovery and well after the expert witness disclosure deadline. Defendants had no opportunity to verify whether Dr. Murry's opinions were accurately reported by Dr. Kenan or to explore the basis for Dr. Murry's opinions. Plaintiff's supplementation to Dr. Kenan's report is clearly untimely and Defendants would be unfairly prejudiced if Dr. Kenan was permitted to testify about Dr. Murry's opinions at trial. *See Akeva L.L.C. v. Mizuno Corp.,* 212 F.R.D. 306 ( M.D.N.C. 2002) and *O'Connor v. Boeing North American, Inc.*, 2005 WL 6035243 (C.D.Cal. 2005). Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Plaintiff's Supplemental Expert Report and Fifth Supplemental Rule 26 Disclosures (#75) is **granted.** The Plaintiff may not call Dr. Murry to testify about the opinions attributed to him in Dr. Kenan's May 11, 2010 supplemental report. In addition, Dr. Kenan is precluded from testifying about the clinical

significance of the lost tumor based on information provided to him by Dr. Murry, other pathologists or based on his own research as described in his supplemental report. Dr. Kenan is not precluded, however, from testifying about the psychiatric opinions set forth in his original report including, as discussed in his original report, his reliance on the records and reports of Plaintiff's treating physicians as a basis for his opinions.

DATED this 8th day of November, 2010.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge